## A. M. McCOMBS v. PITTSB. & W. RY. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BUTLER COUNTY.

Argued October 21, 1889—Decided November 4, 1889.

1. Where a court was requested to charge "that the employer does his duty when he provides his employees in such manner as he fairly and reasonably deems prudent and safe," it was not error to refuse the point, and to substitute for the words, "he fairly and reasonably deems prudent and safe," the words, "in such manner as is fairly and reasonably prudent and safe."

2. In an action by a brakeman against a railroad company, his employer, to recover damages for personal injuries, when there was evidence tending to show that the accident was the result of running a loaded freight car upon a siding where the rails were put down without fish-plates, it was not error to submit the question of the company's negligence, under all the evidence, to the jury.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Charge of Court below.

No. 89 October Term 1889, Sup. Ct.; court below, No. 18 June Term 1888, C. P.

On March 27, 1888, Andrew M. McCombs brought trespass against the Pittsburgh & Western Railway Company, to recover damages for personal injuries alleged to have been caused by the negligence of the company defendant. Issue.

At the trial on September 25, 1888, it was shown that on the morning of August 26, 1887, the plaintiff, a brakeman in the defendant company's employ, was attached to a freight train moving from Foxburg to Callery Junction. The track was a narrow-gauge track, but the train upon which the plaintiff was engaged, was made up of broad-gauge cars which had been moved upon narrow-gauge trucks. At Fowler siding, one of the cars was found to be disabled, and it became necessary to drop it from the train. The plaintiff mounted the car, loaded with lumber, to run it upon the siding, and when it got upon the curve, it turned over and rolled down the embankment, whereby the plaintiff was injured. Witnesses for the plaintiff testified that they examined the track immediately after the accident occurred, and saw that a rail was shoved off to one side, a little, at the end; that the ends of the two rails did not meet, and that there were no fish-plates at the joint.

At the close of the testimony, the court, McMICHAEL, J., instructed the jury in accordance with the answers to the following points:

The plaintiff requests the court to charge:

1. It was the positive duty, incumbent upon the defendant company in this case, to provide a reasonable, good and safe road and track, ties and rails of proper material and size and strength, and properly laid down and secured, for the employees engaged in moving the train or cars; and if the jury find from the evidence that a fish-plate had not been placed to connect the rails where the accident occurred, and the accident was the result of the defendant's omission to do so, the defendant is responsible to plaintiff for the injury sustained.

Answer: The first part of this point states the law correctly, but the court cannot affirm the point as one entire proposition, because the latter part of the point substantially asks the court

to say, that if the fish-plates had not been placed to connect the rails where the accident occurred, and the accident was the result of the defendant's omission to do so, then the company was guilty of negligence. The court decline to say, as a matter of law, that the omission of the fish-plates was negligence on the part of the company; it is for the jury to say whether the evidence satifies them that such omission was negligence.

2. That the plaintiff, by entering the service of the defendant as a brakeman, assumed only ordinary and reasonable risks incident to such employment; and if the jury find that the accident was the sole result of defendant's neglect to construct fish-plates on the rails where it occurred, such neglect would not be incident to his employment as such brakeman, and the verdict should be for plaintiff.

Answer: This point is refused for the same reason that the court gave for refusing the first point. The court leave it to the jury to determine, from the evidence, whether the neglect to put fish-plates at the joints of the rails was such negligence or failure of duty on the part of the defendant as to make it liable, under the instructions already given you.

3. If the jury find that the accident was the result of the negligence of the defendant company in omitting, neglecting and failing to construct and place fish-plates on the two rails where it occurred, and the plaintiff was at his post of duty as brakeman at the time, he should recover.

Answer: This point is affirmed. You will observe, gentlemen, that it is put, if the jury find that the accident was the result of the negligence of the defendant company, and he was at his place of duty, on duty, then he may recover.

The defendant requests the court to charge:

1. That an employer does not impliedly guarantee the absolute safety of his employee. In accepting employment the employee is assumed to have notice of all patent risks incidental thereto and of which he is informed, or of which it is his duty to inform himself, and is further assumed to undertake to run such risks.

Answer: This point is affirmed.

2. That a servant entering the employ of the company assumes all the ordinary risks of his employment, and cannot hold his master responsible for an injury which cannot be traced

directly to his negligence. And the fact of the happening of the accident and injury complained of at the time and place alleged, raises no presumption of negligence on the part of the defendant company, or that such siding was insufficient or unsafe, and the burden of proving negligence of the employer is on the plaintiff.

Answer: This point is affirmed.

3. That the employer does his duty when he provides his employees in such manner as he fairly and reasonably deems prudent and safe; and if he furnish appliances which, although not the best that can be obtained and yet may be used without danger, he has discharged his duty and is not responsible for accident or injury.

Answer: This point would be affirmed if it read thus: That the employer does his duty when he provides his employees in such manner as is fairly and reasonably prudent and safe; and if he furnish appliances which, although not the best that can be obtained and yet may be used without danger, he has discharged his duty and is not responsible for accident or injury. That leaves out the words "he deems" prudent and safe. It is not the question of what he decides may be prudent, but what is, in point of fact, reasonable, prudent and safe that he is required to furnish.[1]

4. That in a suit by an employee against the company for injuries, negligence cannot be inferred but must be affirmatively proved by the plaintiff. The presumptions are against the employee, if hired by the company and in his regular employment at the time of the accident and injury.

Answer: This point is affirmed. The proposition contained in it is contained in the defendant's first point, which has been affirmed.

5. If the jury should believe that there was no fish-plate on the joint where the accident happened, and that such defect was the cause of the accident, there is no proof that the defendant company had knowledge or notice of such defect, and the plaintiff cannot recover.

Answer: This point is not affirmed. It is for the jury to say whether the company ought reasonably to have known of the defect, and if they ought to have so known of it, and it was the sole cause of the accident, the plaintiff may recover.

6. If the jury believe the testimony of E. N. Hickok, plaint-iff's witness, John Ellis and George Campbell, that the siding where the accident happened was safe for the purpose for which it was used, the defendant had performed its duty to plaintiff, and the accident and injury being one of the risks which he assumed when he entered the employment of the defendant, he cannot recover.

Answer: This point is affirmed.   If the road was reasonably safe then he cannot recover.

7. If the jury believe from the evidence that the accident and the injury resulting to the plaintiff therefrom were caused by the breaking of the east rail on said siding, at the point where the car left the track and overturned, the plaintiff cannot recover; that being one of the risks he assumed when he entered the service of the defendant.

Answer: This point is affirmed, unless the jury find from the evidence that the breaking of the rail was the result of the culpable negligence of the defendant, in the manner you have already been instructed.   That is, if the rail was either an imperfect, unfit rail, unsafe reasonably, and then it broke when being properly used, the plaintiff might have a cause of action.[2]

8. That although the jury believe there was no fish-plate on the joint north of the switch point, there is no proof that the want of fish-plates was the cause of the accident, and the burden of proof being on the plaintiff to show the cause of the accident, and not having shown that, he cannot recover.

Answer: This point is not affirmed.   I decline to instruct you that there is no proof that the want of the fish-plates was the cause of the accident.   There is some evidence on that subject and the evidence is for the jury.   You, gentlemen, will remember what the witnesses said with respect to the displacement of the rail there.   One of the plaintiff's witnesses said something about it being displaced just a little, and that there were some marks or indications as though a car had passed over the end of the rail abutting on it, and that is for you. You will remember what the witnesses said as to the condition the rail was in when it was first seen after the accident, and from all these facts it is for you to determine whether or not there was sufficient proof, that the want of the fish-plate was the cause of the accident, or whether there was sufficient proof that it was the cause of the accident.[3]

9. That if there was negligence in not putting fish-plates on the joint on said switch north of said switch point, and said negligence was the cause of the accident, said negligence was that of the plaintiff's fellow-servants, the section boss and trackmen who constructed the siding, and the plaintiff cannot recover.

Answer: This point is not affirmed. It is for the jury to determine from the evidence, under the instructions given you, whether the defendant was culpably negligent in constructing its track, and whether the accident was the result of that negligence. It is true, gentlemen of the jury, that the plaintiff could not recover here if the evidence satisfies the jury that this accident occurred, not because of the negligence of the railroad company, but because of the negligence of a co-employee, that is, a fellow-servant with himself, and a trackman would be a fellow-servant with himself. But, if the railroad company put down a railroad track and then undertook to run the trains upon it, it is for the jury to say whether under all the circumstances they reasonably ought to have known that it was imperfect, if in point of fact the jury conclude that it was unsafe. The railroad company cannot shield itself by the fact that it did not know, if it was indifferent to the interests of a proper construction of its road, and let it go without making proper inquiry. It is for the jury to determine then whether they, even if they did not have actual knowledge that there was anything wrong (and there was something wrong, if that be true), yet it is for the jury to determine, whether reasonably they ought to have known; whether proper, ordinary prudence would have informed them.

10. That the plaintiff has not shown such negligence or want of proper care on the part of the defendant company as will entitle him to recover.

Answer: This point is refused. Whether the plaintiff has shown negligence or want of proper care on the part of the defendant is for the jury to determine.[4]

11. If the jury believe the testimony of Hickok, Magee, Hagan, and the plaintiff, that they were ordered to take their train out of West siding and proceed to Callery Junction, and that they had no orders from the company or any officer thereof to go in upon Fowler siding, the plaintiff as well as his fel-

Charge of Court below.

low servants were on said siding without authority, and the defendant is not responsible to plaintiff and he cannot recover.

Answer : This point is not affirmed. The court will not say that the plaintiff and his fellow-servants were outside of their place or line of duty, in putting this car on the Fowler siding, without positive orders from the company to put it there. That, gentlemen, is also another question for you, along with the other facts of this case. Whether the Fowler siding was provided for that purpose, or for such a purpose, and whether reasonably this plaintiff and his co-employees were in the line of their duty in putting that car on that place without orders, —there is no pretence they had any direct orders—was it their duty to do that; was it their duty to take it somewhere else ? The court will not undertake to say that they should have taken it somewhere else, and not put it in there, nor will the court say they should have put it there or that it was their duty to put it there. They might have put it somewhere else. One of the witnesses testified they might have switched it out there on the West siding. It is for the jury to say, under all the facts of this case, whether they were outside of their duty in doing what they ought not to have done in putting the car where they did. If they were outside of their duty, doing an improper thing there, a thing the company did not intend, did not build that track for the purpose of having done, then the company would not be liable.[5]

12. If the jury believe the testimony of Magee and the plaintiff, the plaintiff knew at the time he went upon said car that the engineer furnished by the defendant to operate or handle the engine attached to said car had left said engine, and that the said engine and car were being handled by a person who had no authority so to do, who was not employed by said company for that purpose and who has not been shown by plaintiff to have been a competent person to handle said engine safely, and the plaintiff is not entitled to recover.

Answer : This point is not affirmed. The court will not presume that the plaintiff or his fellow-servants were negligent, simply because the plaintiff failed to prove affirmatively that the fireman was a competent person to handle the engine properly at the time of the accident.[6]

The jury returned a verdict in favor of the plaintiff for $4,500. A rule for a new trial was ordered, and in disposing of the same, the court, on March 4, 1889, ordered that a new trial should be granted, unless the plaintiff within thirty days should file a remittitur damnum to the amount of $800 of the verdict rendered. The plaintiff having acceded, judgment was entered in his favor for $3,700, when the defendant company took this writ, assigning as errors :

1–6. The answers to the defendant's points.[1 to 6]

*Mr. R. P. Scott*, for the appellant.

Counsel cited : Phila. etc. R. Co. v. Hummell, 44 Pa. 377 ; McCully v. Clarke, 40 Pa. 399 ; Hays v. Millar, 77 Pa. 238 ; Baker v. Fehr, 97 Pa. 72 ; Rummell v. Dilworth, 111 Pa. 343 ; Shaffer v. Haish, 110 Pa. 575 ; Payne v. Reese, 100 Pa. 304 ; Phila. etc. R. Co. v. Sentmeyer, 92 Pa. 276 ; North. Cent. Ry. Co. v. Husson, 101 Pa. 1 ; Sykes v. Packer, 99 Pa. 465 ; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 194.

*Mr. John M. Greer* and *Mr. Lev. McQuistion* (with them *Mr. Everett Ralston*), for the appellee.

Counsel cited : Caldwell v. Brown, 53 Pa. 453 ; Frazier v. Railroad Co., 38 Pa. 104 ; Patterson v. Railroad Co., 76 Pa. 393 ; Penna. etc. Canal & R. Co. v. Mason, 109 Pa. 296.

PER CURIAM :

In its third point defendant below requested the court to charge " that an employer does his duty when he provides for his employees in such manner as he fairly and reasonably deems prudent and safe, and if he furnishes appliances which, although not the best that can be obtained, and yet may be used without danger, he has discharged his duty, and is not responsible for accident or injury."

The learned judge, being unwilling to take such a long stride in advance of anything that has heretofore been claimed as the proper standard of the duty which employers owe to their employees, substituted the words, " is fairly and reasonably prudent and safe," for the words, " he fairly and reasonably deems safe," and said it is not what he decides may be prudent, " but what is, in point of fact, reasonable, prudent, and safe, that he

is required to furnish." With that modification he affirmed the point. In that he was clearly right. If the doctrine asserted in the point were recognized as correct, we would have as many standards of duty as there are degrees of carelessness among employers, and every employer would have to be adjudged guilty of negligence or not, according to his own standard of duty to his employees in each particular case. That would never do. The first specification cannot be sustained.

As presented, defendant's seventh point might have been properly refused, but the learned judge affirmed it with a qualification that was undoubtedly correct.

In defendant's eighth and tenth points, respectively, the court, on an assumed state of facts, was substantially requested to withdraw the case from the jury, and direct a verdict for defendant company. In view of the evidence, it would have been manifest error to have done so. The learned judge was clearly right in refusing to affirm either point, and in answering them as he did.

He was also right in declining to affirm defendant's eleventh and twelfth points. The case was clearly for the jury under all the evidence, and it was fairly submitted to them in a clear and correct charge that was as favorable to the plaintiff in error as it had any right to expect. Neither of the specifications of error is sustained.

Judgment affirmed.